The next case on our docket is 22-50656, Alvarez v. Texas Education Agency. May I approach you, Madam? Sure. Thank you. Good morning. May it please the court, Chief Justice Richmond, Justice Stewart, Justice Douglas, counsel, Thank you for letting me be here today. We're here on behalf of a young man, we're calling him J.A., who has significant disabilities. But we're really here on behalf of other children like him across the state of Texas. We weren't able to get into discovery on exactly how many there were, so we asked the court maybe to take judicial notice of the Texas Education Agency's own website. But there's about 7.5 million children and students in Texas that receive special education services from 3 to 21. If we just do the numbers, we figure there's over a million and a half or so, between a million and 1.5 million of kids over 18. Practically, most kids that have disabilities that can go to school do, and they leave at 18, 19 like everyone else. Then there's a number of students that go on to vocational types of services that they can do as they get older and they leave school too. My point being that the kids that are left in school by the time they're 20, 21, 22 are the J.A.'s of the world. There's quite a number of them. There may be 400,000, maybe 500,000. Why I say that is all the cases that are heard before the Fifth Circuit deal with public policy issues. They all do, obviously. But this is a very, very strong public policy issue. Forgive me of a rant of an old man or some righteous nation, but special education services have been available to children for the last 50 years. In 2007 or so, Congress realized there was a little bit of a hole in the bucket, and they passed what was called 1415, 20 U.S.C. 1415 M2 that deals with what's called the special rule, the realization that children with significant disabilities who don't have guardianships, who can't execute a power of attorney, who can't execute an advance directive of any type, don't have the ability to let people know really, God bless, what they can do or can't do. Congress realized that in 2007, passed this special rule, told states they shall do it. We'll talk a little bit about statutory construction here in a minute. They said they shall do it. Well, Texas didn't do anything. Texas didn't think these kids were all that important. So fast forward to about 2015. There was a case called Reyes v. Maynard Independent School District where the issues of students between 18 and 21, 22 came up in the district court, and then before the Fifth Circuit. And the Fifth Circuit ruled on that case in the spring of 2017. Interestingly, and I think once again part of what we might consider statutory construction, we certainly can infer that two months later, the Texas legislature and the Texas Education Code at Section 29017F said the commissioner, and in Texas they call it the administrative rules for kids with special education needs, the commissioner's rules. They said the commissioner shall promulgate this special rule. By my simple rules of statutory construction, shall. They didn't do it again. So our case with JA started back a couple years now, right? We go through a due process hearing. The next thing I want to talk a little bit about that doesn't show up in the briefs, nor could they, is lawyering. Not just the fact, not just the law, but actually lawyering special education cases on behalf of children with disabilities. So as we know, we go back to the Rowley case, the first Supreme Court case that deals with special education issues, that procedural safeguards, they use our gainset that the Congress put into special education law significant procedures to enhance the rights of students with disabilities. And of course, one of those rights is to be able to make a complaint, file a request for a due process hearing, go before a special education officer and have a trial, except it's a bench trial. But otherwise, it's like a trial. But if you will, hone in on your specific argument that the TA who you sued is the party that can provide the relief that's needed. You all have briefed to us that the Texas legislature has had the issue teed up. So clarify your argument of why the TA who you sued. And if I want to reword it a little bit, forgive me, I want to make sure I get it right. It has to do with the redressability issue. Am I correct, Your Honor? Right. Okay, well, two things there. One, go back to the pleadings for a minute. There we pled claims under the idea I started talking about. We pled claims of discrimination based upon disability under 504 in the ADA and constitutional claims. The constitutional claims were dismissed early on. The discrimination based upon disability claims were live. So my first issue to the redressability issue in the case overall is regardless of whether or not there's redressability issues under the idea, there's plausible claims of discrimination based upon disability under 504 in the ADA. So we believe the district judge erred when not considering those. But I think, and let me say this without being flippant, making it even easier for the courts, the TA never briefed that issue. They didn't brief it below, they didn't brief it when I brought it up in our appellant's brief. As far as I'm concerned, that's waived. So as regards to redressability and plausibility of discrimination based upon disability claims, I submit to you that the district court erred and you should issue an order accordingly. In regard to the redressability issue as to... Well, let me just say, even if they filed no brief, we would have to find error. We can't just say, well, since they didn't brief it, you win. But go ahead. I'll answer both questions. I would say the fact that they didn't answer it at all is an error. They waived it. That's part one. And we have plausible claims that are before the court. But let me get back to that one in a second, too, Your Honour, while I ponder and answer it a little bit better. As part of the plausibility issue, Your Honour, and the redressability issue, I'm sorry, the TEA recently sent a letter to the court, and in that they submitted, based upon the Prince case, a United States case, a Supreme Court case, that this court didn't have the ability to tell the TEA what to do, in essence. That case very specifically noted that claims based upon spending clause litigation or legislation can be addressed by the courts. And claims based upon spending clause legislation that come before the Fifth Circuit, the Supreme Court, or a district court can be addressed. And more specifically, in the Supreme Court case, Barnes v. Gorman, it goes back a ways. One of the findings by the court in that case was that . . . Let me ask, what are you specifically asking this panel to do? Are you requesting that this court order the TEA to do something independent of what the Texas legislature is considering? I'm not talking about your ADA claim, but what is the relief you seek? I mean, we get . . . Right. . . . the case you make for the young people involved, et cetera, but what are you asking the panel to do, to order TEA to do something that appears facially the Texas legislature is empowered to do? If so, what's the basis for that? Yes. Well, one part of the analysis is that, once again, the plain language of the federal statute says the state legislatures . . . the states shall, because they receive money from the federal government. The Texas Education Code specifically said the commissioners shall develop these rules. So we believe that you can order the state of Texas to follow the law. Simply put. And now, you know, there's a lot of discussion about . . . That is to require the TEA to follow the direction of the Texas legislature in subsection F, which tells the commissioner to promulgate the rules. Is that what you mean by that? Yes. That's part one. The other thing, going backwards, was, of course, that we're asking the court to say that we have plausible discrimination based upon disability claims. The other thing that I brought up, and maybe the course of least resistance, and I've got five minutes left now, and I may have to talk about it next, is that I think Texas law already has a process in place to address this issue. I mean, it's uncontroverted that JA satisfies this inability to make informed consent issues about educational issues. I mean, there's no question about that. Nobody's contested that. Not anywhere along the way. Early on, when we had our first due process hearing, we asked the hearing officer to appoint the father as an ex-friend under Texas Rule of Civil Procedure 44, and that person refused to do so, which is rather interesting because the Texas rules, these commissioner's rules adopt and incorporate by reference the Administrative Procedure Act. It incorporates by reference the Texas Rules of Evidence and the Texas Rules of Civil Procedure. I don't see how a hearing officer can say he or she doesn't want to follow Rule 44. There's nothing in the law anywhere that says a hearing officer can pick and choose what rules they want to follow. The important part about this is not just a legal issue, Your Honor, it's actually a factual issue because the special education hearing officer in the best position to determine whether or not a kid has the ability to provide informed consent for their educational needs or not. Once again, go back from a procedural perspective. The cure. We go before the hearing officer and we say, Your Honor, this child is so disabled, he or she can't give informed consent. Why is a guardianship not a priority? The guardianship is important, but the guardianship is expensive, time-consuming, and within Texas, at least, there's a guardian of the person and a guardian of the estate. So that means for a person to be able to file a due process hearing on behalf of a child, they have to go to court, spend $3,500, approximately what it costs, get a guardian of the person, get a guardian of the estate, and then every year thereafter they have to hire an attorney to do reporting because you have to have an attorney for a guardian of the estate. Guardians of the person does not give the person, the guardian of the estate, the ability to file due process hearings. They would give the person the right to handle medical issues and educational issues, but not legal ones, Your Honor. So the guardianship is a possibility. I mean, granted it is, but let's face it, lots of folks are poor. And we're talking about under special education, the duty of the state to provide what's called a free, appropriate public education. Why should some families have to pay to be able to have their procedural rights safeguarded and other people not? So that's my answer. I wasn't able to locate, so apologies if I missed it. Was there any reasoning given for the denial of the request? So a point? Yeah. Buried in the records was kind of a simple denial. Two things came up. One was the hearing office said they didn't have the authority to make that type of determination about a person's mental capacity. So in fairness to the process, the hearing officer said, yeah, I can determine this, this, and that, but I can't determine when that person doesn't have that type of capacity. And the interesting thing is they do that all the time, actually, when they go through a child's special education programs and they look at the data. You know, by then, by the time the kid's 18, they're going to like 12 annual meetings. They've been assessed every three years. When they're 14 years old, they get a transition plan. And let's face it, if the transition plan is you're going to college, if the transition plan is you're going to be a plumber or a carpenter or work in a restaurant, great. If the transition plan is when you get out of school, that's the end of it. That's a pretty big hint that that kid doesn't have capacity. Once again, usually the fight isn't whether or not they have capacity. The fight has been over, you know, the legal authority. So to go back to everybody's question, what can this court redress, most easily it can comment on what we consider the special education officer's not just duty to make these decisions, but enforce them. They can and should. They can do it right away. There's no legislation needed. They just have to follow the rules that are already out there. Thank you very, very much for letting me be here. I'll be back in a couple minutes. Thank you. Good morning, Your Honors. Ryan Bosch for the Texas Attorney General's Office on behalf of the Texas Education Agency. I'd like to start by addressing the relief that my friend on the other side is requesting. I think this goes to one of your questions, Judge Stewart. This is at ROA, page 572. This is Alvarez's motion for judgment on the pleadings. He requested there that TEA be ordered to adopt the special rule. I think that we're here on review of the district court's dismissal of that request. As to that request, Alvarez cannot obtain the relief he seeks under IDEA. That's for three reasons. He cannot show that Texas is obligated to establish the special rule. He cannot show that TEA has power to promulgate the rule. He cannot show that this court can order TEA to promulgate the special rule as a proper remedy. Why does subsection F not cure all of those issues? If the Texas legislature said that the commissioner shall promulgate rules, then why is that not the answer to all three subsections that you just said? Certainly, Your Honor. I think it can't be the answer to whether this court has authority to order TEA to promulgate the rule. I think that that's a constitutional issue. But the Texas legislature has already done that, have they not? As to what the Texas legislature has done, that provision directs TEA to promulgate a rule that cross-references the Department of Education's regulations implementing 1415M2, the relevant federal provision that references a special rule. So 29.017F just says that TEA is obligated to promulgate a rule that complies with that provision of federal law. But that provision of federal law, in turn, is conditional. It doesn't say that every state has to promulgate the special rule. It says if state law recognizes this category of persons who are not judged to be incompetent, but who are determined not to be able to provide consent regarding their education plan, if state law recognizes that category, then federal law says you need to promulgate the special rule. Texas law simply doesn't recognize that category, and that's one of the primary reasons why TEA doesn't read that grant in subsection F as authority to create the special rule. Because, in a sense, it's create the special rule for who. There's a null set here. This category simply doesn't exist under state law. But I think the simplest way to resolve this case is with reference to what this court can order the TEA to do. The principal form of relief, as I've indicated, that Alvarez is seeking is for this court to order TEA to promulgate the special rule, but this court doesn't have that authority. In other words, there's no redressability here. In addition, Texas is not obligated to promulgate the special rule for the reason I've already addressed, and TEA doesn't have authority to promulgate the rule. But I'll start with this court's authority because I think that's the cleanest way to resolve this case. Federal courts generally cannot order state agencies to promulgate rules. I think that's the clear-up shot of the Supreme Court's anti-commandeering case law, Prince v. United States and New York v. United States. And I think it's clear under this court's case law as well. Judge Richman, your opinion in 2020 in the Mi Familia Vota case is pretty explicit on this point that federal courts do not have power to order state agencies to promulgate rules. It's clear as a matter of state law as well. This is at pages 596 to 597 of the Record on Appeal. Even state courts don't order state agencies in Texas to promulgate rules. And I think what that all raises is what's the proper remedy here? What's the proper remedy if, assuming arguendo Alvarez were correct, that there's some legal violation here? And as with all spending clause legislation, the remedy is for the federal government, if it determines that a violation has occurred, to withhold funding. And that's at section 1416, subsection E of the IDEA. It lays out a pretty granular process for the Department of Education to undertake in circumstances where the DOE has determined that there's some systemic violation of IDEA, and that process can culminate in withholding of funding. That's the problem. Let me ask you a question. Does the information both of you furnished about the special rule being billed, having been before the legislation before and there now, was that a move towards recognizing this category? In other words, you've argued to us that Texas hasn't recognized this kind of in-between category up to now, so it's the genesis for whatever was happening in the legislature to recognize the category itself as a prerequisite to the federal requirement? We do think that the Texas legislature has to recognize this category in order to trigger the federal requirement. I think that the Department of Education agrees with us there. The Department of Education, this is at ROA, page 46, there's a citation to the Department of Education's discussion about this issue in the Federal Register, and the Department of Education there recognizes that not every state is going to have this category. It's purely a question of state law whether this category is going to exist. So I don't want to go too much into the pending legislation right now in the Texas legislature. I don't know that it's proper for me to talk about legislation that hasn't really been enacted, but that legislation... Where does that stand? We're in... Sonny Dye's not here yet, but as I understand it, we've just got a few more days left for things to get passed by the Senate and then go to the resolution process. Where are we with respect to that bill? So it would be hard for me to handicap, you know, the odds of that bill passing, of course. It's out of committee in the House of Representatives in the Texas legislature. The companion bill that's in the Senate is not out of committee yet. It's got a long ways to go before it's going to be enacted. Like I said, I don't know that I can handle... We've only got a matter of days, so... We're in countdown mode here, so... Certainly, and Your Honors might take that as indication that it's unlikely to be enacted in this session. Of course, we'll submit a supplemental letter or notification if it does get enacted, and we'll explain there what ramifications that has for this case. But as things stand, that bill has not been enacted, and Texas law does not recognize this category of persons for whom this special rule would attach. As I've indicated, the Department of Education has recognized that not all states are going to have this category, that it's purely a question of state law whether this category is going to exist. I think other state laws are illustrative as contrasts here. Idaho law, for example, says that a disabled adult student's education team can determine that the adult student is not able to give informed consent, and that Idaho law then allows the education team to appoint somebody to act in the student's stead. Texas has nothing like that here. And Alvarez's argument would actually... In addition, it would create an inconsistency with the text of the idea, if you were correct, and that's because there's a provision in Section 1415 that provides that settlements between schools and complainants must be enforceable in any state court of competent jurisdiction. But here, where the student is an adult, it is at least doubtful that a state court of competent jurisdiction would recognize that his father can enter a settlement for him where there's been no guardianship or any like proceeding to establish that the father has those rights. If there's no further questions... His other argument... Was it... Under Civil Procedure Rule 44, he makes an alternative argument that TEA could provide some relief through that mechanism? Certainly, Your Honor. So Texas Rule of Civil Procedure 44 would not allow a hearing officer to appoint his father to make these kinds of determinations. And the reason why, and this is explained a little bit at R.O.A. pages 162 to 63, is that Texas Rule of Civil Procedure 44 requires guardianship-like procedures, likely in a probate court, before rights can be assigned under that provision of the code. So there's a case that's been cited at R.O.A. pages 162 to 63 that goes into that in a little bit more detail. Of course, as my opponent has already indicated, he does not think guardianship is an adequate substitute, and I think that Rule 44, the adequacy of that rises and falls on whether guardianship is an adequate substitute as well. But he'd need a state law prerequisite in the guardianship arena before he would tee up the issue before TEA. Is that what you're saying? He'd certainly be required to undergo guardianship-type procedures in state court in order to attain the rights that he's seeking under Rule 44. And I would direct your honors to the case that's cited at R.O.A. pages 162 to 63 for a little bit more elaboration on why that's so. But my opponent has indicated that the guardianship process is not an adequate substitute here, and so I think for that reason Rule 44 is not an adequate substitute either. I'd note parenthetically, though, that there's not a lot of information in the record about J.A.'s mental condition. However, if it is as severe as Alvarez is represented in this case, then Alvarez is going to need guardianship over his son at some point, regardless of what's happening here for the hearing officer. He's going to need guardianship over his son for life, is what it sounds like. And so we certainly take... I certainly take my friend on the other side's point about the cost of guardianship, but he's going to need to do that one way or another, if everything in the pleadings that he's indicated is really true. Are we looking at a window from age 18 to 21, or does it extend beyond age 21? That's what we're looking at for purposes of the special rule under IDEA. It does extend a little bit beyond age 21. If a student is 21 at the beginning of a school year but is going to turn 22 at some point during that school year, he has IDEA rights throughout the school year. How old is J.A. right now? My understanding is that J.A. is currently 22, so at the end of this school year is going to be the end of his rights under IDEA. And that's because... End of May, end of August, when? I believe it's sometime in June, Your Honor. I wouldn't want to specify an exact date without being able to reference the school calendar. The district court didn't reach his other claims, the ADA, and I forget what the other one was, because it ruled on his initial claims. So are those, if we were to agree with you, are those proper to go back to the district court to consider those in the first instance? So a few points there, Your Honor. The first is that because... I do think the district court addressed the Rehabilitation Act and ADA claims. It might have been a little bit ambiguous about how it was doing so. But the reason I think you can conclude that the district court did address them is because, as I indicated, Alvarez, in his motion for judgment on the pleadings, his only form of relief that he requested was that the court order TEA to promulgate the special rule. And so when the court concluded that TEA didn't have authority to promulgate the special rule, I think that resolved redressability for all of Alvarez's claims. And I think it would be the same here if the court concludes that it can't order TEA to promulgate the special rule. Well, then Alvarez has no redressability under all of his claims, IDEA, Rehabilitation Act, and the ADA. In addition, I do think that IDEA forecloses Alvarez's Rehabilitation Act and ADA arguments, and that's because the Rehabilitation and ADA Act arguments are essentially that TEA's failure to promulgate the special rule is some kind of discrimination based on disability. But the idea, as I've indicated, explicitly recognizes that states can decide, or they may not decide, to have this category of persons for whom the special rule would attach. So that's 1415 M2. And 1415 M2 is... specific over the general here. That's a specific federal allowance for the states to have this category or not have the category. I think that trumps any kind of exotic theory Alvarez might stitch together under the ADA or the Rehabilitation Act saying that failure to have the rule is, in fact, discrimination. If there are no further questions, I'm happy to relinquish the balance of my time, Your Honors. Thank you. A few points. We cited a case called Texas Advocates Supporting Kids with Disabilities against the Texas Education Agency. It's a 2003 case. And it talks a lot about what TEA can or cannot do in terms of promulgating rules. And the specific rule there that was being contested was whether or not they could promulgate a rule regarding statute of limitations. Now, what's very important is there is nothing in federal law regarding idea about statute of limitations. There was nothing in state court about statute of limitations. Yet, nevertheless, TEA promulgated a rule dealing with limitations. It was contested. And the courts, historically, ever since, have said TEA has authority to do that and obviously lots of things, which they do. Here we have a situation where there's a federal mandate that says shall. Here we have a state mandate that says shall. So I think it's disingenuous for the state to now say they don't have to do it. But what's your response? Counsel opposite is citing specific provisions within the legislation that says the state must have embraced this category. Then the shall kicks in. You're arguing as if, you know, straight across the board, all 50 states and territories must do X. So he's making a different argument. So, I mean, address that head on. And if so, point to the portions in the statute, etc., that support what you're saying. You're up on rebuttal. One of the things I do, believe it or not, is I've read Rehnquist's Rules of Statutory Construction. I follow it religiously when I come to court. It's really good. And one of the things that sticks out is that when we do statutory construction, which is what counsel just did, we just can't deconstruct a sentence or deconstruct one part of a statute. We have to look at the entire statute. What's the intent of the entire statute? And what's the case law? The overall case law is to do whatever we can to assure the rights of children with disabilities are effectuated. It would help me if you addressed specifically the question I'm asking. I'm sorry? I said it just would help me if you specifically addressed the question I'm asking. Counsel opposite is pointing to the specific subsection of another statute saying, yes, it's mandatory, but only if states recognize this category of persons. And I'm just asking you if you point to the same persons and identify why that's not so. The argument is, if I'm hearing it correctly, that the state has to have a category that it already sets up to address this issue. The Texas Education Code in that section told the commissioner to do that. So basically you're asking me to answer the unanswerable question because the Texas Education Agency did not do what federal law required. He sued in state court? No. Hold that thought, Your Honor. But I've got a minute. So, and once again, I think it's disingenuous to deconstruct that statute and create a condition that doesn't exist, Your Honor. Just to be frank. I mean, there's nothing in the plain read of the statute that says what the state says it says. Your Honor, you were going to say something? I wasn't. Once again, I want to thank you for letting me be here today. I think there's the issue of redressability under the IDEA. I think the claims related to 504 and ADA stand on their own. Just as we've seen in the recent Supreme Court case of Perez v. Sturgis ISD, you can have IDEA claims, you can have ADA claims, you can have 504 claims, and they're all independent. So I believe that claim is live and the district court erred for dismissing it. I believe that the rule that the court can write on in order for the Texas Education Agency to follow its own rules and the rules of civil procedure in particular, I think, once again, the courts have the ability to use whatever's in the record to either affirm or deny a case from underneath. Thank you so, so much.